IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARIETTA PATRICK,

        Plaintiff,

v.                                   **Civil Action No. 3:15cv565**

CITY OF PETERSBURG, VIRGINIA, *et al.*,

        Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on three motions: Defendant City of Petersburg, Virginia's ("Petersburg") Motion to Dismiss Plaintiff Marietta Patrick's Amended Complaint (the "Petersburg Motion to Dismiss"), (ECF No. 11); Defendant Deborah Broughton's Motion to Dismiss Patrick's Amended Complaint (the "Broughton Motion to Dismiss"), (ECF No. 12); and, Patrick's First Motion for Summary Judgment (the "Patrick Motion for Summary Judgment"), (ECF No. 21). The motions to dismiss have been filed pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] The Motion for Summary Judgment has been filed pursuant to Federal Rule of Civil Procedure 56.[2]

---

[1] Fed. R. Civ. P. 12(b)(6) allows a party to seek dismissal for "failure to state a claim upon which relief can be granted."

[2] Federal Rule of Civil Procedure 56(a) provides, in pertinent part:

(a) **Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

Patrick does not oppose the Petersburg Motion to Dismiss. (ECF No. 17.) Patrick has responded to the Broughton Motion to Dismiss, (ECF No. 19), and Broughton has replied, (ECF No. 20). Broughton has responded to the Motion for Summary Judgment. (ECF No. 26.) Patrick has not replied, and the time to do so has expired. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[3]

For the reasons that follow, the Court will: (1) grant the Petersburg Motion to Dismiss; (2) grant the Broughton Motion to Dismiss; and, (3) deny as moot the Patrick Motion for Summary Judgment.

## I. Federal Rule of Civil Procedure 12(b)(6) Standard[4]

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

---

[3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Complaint is brought under 42 U.S.C. § 1983 and alleges a Fourth Amendment violation.

[4] In light of the Court's decision to grant the Broughton Motion to Dismiss, the Court will deny as moot the Patrick Motion for Summary Judgment. The Court need not discuss the standard for evaluating a motion for summary judgment under Federal Rule of Civil Procedure 56.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those stating a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

## II. Procedural and Factual Background

### A.   Procedural Background

Warden Deborah Broughton, in her official capacity as the Animal Control Officer for the Petersburg; Deborah Broughton, in her individual capacity; and, Petersburg (collectively, the "Defendants"), removed this case from the City of Petersburg General District Court. (ECF No. 1.) In the City of Petersburg General District Court, Patrick filed a Warrant in Debt, alleging on a standard state court form that the Defendants owe her $25,000 for "trespass" and a "[v]iolation of civil rights under 42 U.S.C. § 1983." (ECF No. 1-1.) After the Defendants filed a Motion for a More Definite Statement, (ECF No. 3), this Court ordered Patrick to file an amended complaint, (ECF No. 6).

3

Patrick brings her Amended Complaint against the Defendants, alleging a violation of the Fourth Amendment[5] to the United States Constitution.[6]  (ECF No. 7.)  Patrick seeks $25,000 in compensatory damages[7] and $100,000 in punitive damages.  Petersburg moved to dismiss the constitutional claim against it on the basis that Patrick fails to allege that Petersburg had a policy or custom of inadequate training.  (ECF No. 14.)  Patrick does not oppose the Petersburg Motion to Dismiss.  (ECF No. 17.)

Broughton has moved to dismiss the claims against her in both her individual and official capacities on the basis that Patrick fails to allege a constitutional violation.  (ECF No. 13.)  Broughton additionally contends that Patrick failed to plausibly plead punitive damages.  Finally, Broughton argues that she is entitled to sovereign immunity in her official capacity and qualified

---

[5] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

[6] Patrick brings her constitutional claims under 42 U.S.C. § 1983, which provides a private right of action for a violation of constitutional rights by persons acting under the color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

[7] Patrick notes in the Amended Complaint that the $25,000 figure is "soon to be amended to" $100,000.  (Am. Compl. 12–13.)  Patrick has not sought to amend the Amended Complaint.

immunity in her individual capacity. Patrick has responded to the Broughton Motion to Dismiss, (ECF No. 19), and Broughton has replied, (ECF No. 20).

With the motions to dismiss still pending, Patrick filed the Patrick Motion for Summary Judgment on Broughton's "claim of 'qualified immunity' leaving only to be determined the amount of [Patrick's] damages under her filed [Amended] Complaint." (Mot. Summ. J. 1, ECF No. 21.) Broughton has responded. (ECF No. 26.) Patrick has not replied, and the time to do so has expired.

## B.   Summary of Allegations in the Complaint[8]

Patrick owns real property at 2029 Colston Street in Petersburg, Virginia, where she resides with several dogs. On or about February 25, 2014, Broughton came to Patrick's residence to investigate an injured dog in the backyard. Broughton then sought a search warrant for the property, alleging dogfighting and cruelty to animals under Virginia Code §§ 3.2-6571[9] and 3.2-6570,[10] respectively. Broughton provided an affidavit that stated the following:

> On February 25, 2014[,] Petersburg Animal Control was dispatched to 2029 Colston Street for two dog fighting [sic]. Upon arrival at 1759 hours, I met with officers at the scene at the residence to the left of 2029 and went into the backyard where we could see over the privacy fence and see a canine lying on the ground not moving, barely breathing, covered in blood; this dog has expired at the emergency veterinarian center. There were approximately 7 or 8 dogs in the back yard with the before mentioned canine. Another canine that is red and white in color had blood all over its head, neck and chest. I then entered into the back yard and retrieved the injured canine. I observed injuries on that canine that are consistent with dog fighting.

---

[8] For purposes of the motions to dismiss, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Patrick. *Matkari*, 7 F.3d at 1134.

[9] Section 3.2-6571 provides criminal penalties for, among other things, "the fighting of animals for amusement, sport or gain." Va. Code § 3.2-6571 (2016).

[10] Section 3.2-6570 provides criminal penalties for cruelty to animals. Va. Code § 3.2-6570 (2016).

(Am. Compl. ¶ 15.) Broughton swore in the affidavit that she had personal knowledge of the facts set forth and that she had been Chief Animal Control Officer with the Petersburg Bureau of Police since 2012.

The Amended Complaint alleges that Broughton "had absolutely no experience in investigating and [obtaining] search warrants in 'dog fighting' cases" and that "[h]er training consisted of nothing more than approximately [five] hours of classroom time." (*Id.* ¶ 18.) As a result, Patrick asserts, Broughton "knew . . . that there was no evidence of any 'dog fighting operation.'" (*Id.* ¶ 18.) The Amended Complaint further alleges that the Attorney General's Office for the Commonwealth of Virginia provided to Broughton a video that featured a dogfighting operation on Washington Street, which Broughton had been told was not the 2029 Colston Street residence. Broughton did not provide this information to the magistrate, who then issued the search warrant.

On February 25, 2014, members of the Petersburg Bureau of Police conducted a search of Patrick's house while Broughton waited outside. Broughton permitted Amy Taylor,[11] a member of the Virginia Animal Fighting Task Force, to independently search the house. Taylor concluded that there was no evidence of abuse or neglect of the dogs in the house or the yard. During the search, Taylor informed Animal Control Officer Kelly Garcia that "this was not the location that Broughton told me about" and "this was supposed to be Washington Street from the video." (*Id.* ¶ 23.) Broughton then seized all of Patrick's dogs, claiming they were not properly cared for. Members of the search team seized Patrick's tax returns and personal financial records

---

[11] The Amended Complaint describes Taylor as "a non-law enforcement animal fighting advocate." (Am. Compl. ¶ 17.)

that were not listed on the search warrant.[12]  Petersburg returned the seized dogs to Patrick after she paid $1,200 and incurred $1,500 in legal fees.

### III.  Analysis

This case presents an atypical procedural posture.  Patrick filed the Patrick Motion for Summary Judgment before the Court issued its decisions on the motions to dismiss.  Stated differently, Patrick has asked the Court to enter judgment in her favor[13] before determining whether she states a claim upon which relief can be granted.  Common sense advises that the Court should address the motions to dismiss first.

### A.    Patrick Concedes Her Claims Against the Petersburg

The Court first assesses the Petersburg Motion to Dismiss.  In her response, Patrick concedes her claims against Petersburg.  She provides: "[Patrick] *does not contest* the City of Petersburg's Motion to Dismiss [because she] must in any case prove [her] case against . . . Broughton and that if successful in that action, the source of compensation or possible compensation would be the same." (Pl.'s Resp. to Petersburg's Mot. Dismiss 1 (emphasis added).)  Expressing a strategic desire to balance the costs of litigating some claims over

---

[12] Patrick alleges that "Broughton seized items such as [Patrick's] tax returns and personal financial records which were not listed on the search warrants as items sought." (Am. Compl. ¶ 26.)  This allegation would conflict with Patrick's assertion that Broughton remained outside the residence during the property search.  (*See* Am. Compl. ¶ 21.)  In her response to the Broughton Motion to Dismiss, Patrick clarifies that Broughton "directed the search by others." (Pl.'s Resp. to Broughton Mot. Dismiss 7, ECF No. 19.)

[13] Patrick specifically has asked that the Court grant summary judgment on Broughton's defense "of 'qualified immunity' leaving only to be determined the amount of [Patrick's] damages under her filed [Amended] Complaint." (Mot. Summ. J. 1.)

others,[14] Patrick notes that she "does not oppose the dismissal case [sic] against the City of Petersburg." (*Id.* at 2.)

In doing so, Patrick expresses more than a simple intention not to respond to the legal arguments set forth by Petersburg. Some courts have ruled that a plaintiff's failure to respond to the opposition's argument for dismissal constitutes an abandonment of the challenged claim.[15] The Court need not make such a finding here. Patrick expressly conveys that she does not "contest" the Petersburg Motion to Dismiss or "oppose the dismissal [of the] case" against Petersburg. (*Id.* at 1–2.) Her strategic decision to conserve fees by pursuing one claim over another extends beyond merely neglecting to respond to Petersburg's arguments. The Court will grant the Petersburg Motion to Dismiss and dismiss all claims against Petersburg.

---

[14] Patrick explains that she:

> does not wish to run up a huge legal fee bill *to prove* that Broughton was inadequately trained or that the fact that the training was so lacking as to constitute an unwritten policy or custom. The effort needed to succeed against the City of Petersburg and the different of [sic] standards of proof [sic] involved in order to *prove* a valid civil rights violation does not at this time pass the risk or effort-reward test.

(Pl.'s Resp. to Petersburg's Mot. Dismiss 1–2 (emphasis added).)

[15] *See, e.g., Muhammad v. Maryland*, No. ELH-11-3761, 2012 WL 987309, at *1 n.3 (D. Md. Mar. 20, 2012) ("[B]y failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim."); *Wainright v. Carolina Motor Club, Inc.*, No. 1:03 CV 01185, 2005 WL 1168463, at *13 (M.D.N.C. Apr. 27, 2005) ("Plaintiff's failure to argue this claim is tantamount to abandonment of the claim."); *see also Hopkins v. Women's Div., General Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004). *But see United States v. Sasscer*, No. Y-97-3026, 2000 WL 1479154, at *2 n.6 (D. Md. Aug. 25, 2000) ("[T]he Court need not grant a motion to dismiss based on the failure to file a timely opposition when the motion is plainly lacking in merit.").

**B.      Patrick Does Not State a Claim Upon Which Relief Can Be Granted Against Broughton**

The Court next evaluates the Broughton Motion to Dismiss. The Court will grant the

Broughton Motion to Dismiss.[16] Patrick brings her Fourth Amendment claim pursuant to

42 U.S.C. § 1983, which provides a private right of action for a violation of constitutional rights

by persons acting under color of state law.[17] To plausibly allege a constitutional violation

pursuant to § 1983, the Complaint must establish that: (1) Broughton engaged in conduct that

deprived Patrick of a federal constitutional right; (2) Broughton was acting under color of state

law; and, (3) Broughton's acts proximately caused Patrick's damages. *See Daniczek v. Spencer*,

156 F. Supp. 3d 739, 747 (E.D. Va. 2016) (citing *Amato v. City of Richmond*, 875 F. Supp. 1124,

1132–33 (E.D. Va. 1994), *aff'd*, 78 F.3d 578 (4th Cir. 1996)).

---

[16] Because Patrick has conceded that she will not maintain a claim against Petersburg, Patrick necessarily concedes her claims against Broughton in her official capacity as well. "It is a matter of black-letter law . . . that suits against governmental officials in their official capacities are considered suits against the government, not the individual officials themselves." *Weth v. O'Leary*, 796 F. Supp. 2d 766, 772 (E.D. Va. 2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). "[I]n an official-capacity action, . . . a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citations omitted). Because Patrick does not endeavor "to prove that Broughton was [so] inadequately trained or that the fact that the training was so lacking as to constitute an unwritten policy or custom," Patrick necessarily admits that she does not wish to pursue a claim against Broughton in her official capacity. (Pl.'s Resp. to Petersburg's Mot. Dismiss 1–2.) The Court will grant the Broughton Motion to Dismiss to the extent it seeks dismissal of the claims against Broughton in her official capacity.

[17] "Section 1983 . . . 'is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.' . . . Hence, to establish liability under Section 1983, a plaintiff must show that the defendant, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 692 (E.D. Va. 2004) (citations omitted).

Patrick points to the search of her house in the absence of probable cause as the violation of her Fourth Amendment right to be free from search and seizure.[18]  With respect to Broughton's involvement, Patrick acknowledges that Broughton did not partake in the physical search of the property.  Indeed, the Amended Complaint alleges that Broughton remained outside the house as other individuals conducted the search.  Nonetheless, Patrick contends that Broughton *caused* the allegedly unconstitutional search and seizure by submitting a deficient and misleading affidavit to the magistrate.[19]  Broughton argues that the neutral magistrate's[20]

---

[18] Broughton notes that Patrick mentions the Fifth and Fourteenth Amendments in the Amended Complaint.  While Patrick generically references these claims in the "Jurisdiction" section of the Amended Complaint, (Am. Compl. ¶ 2), she forecasts no intention of pursuing these claims against Broughton throughout the body of the Amended Complaint, and she omits reference to these causes of action in her briefing.  Consequently, she fails to state a claim upon which relief can be granted, and the Court will dismiss any purported claims alleging violations of the Fifth and Fourteenth Amendments.

Patrick also does not enumerate a claim for common law trespass and, in spite of Broughton's motion to dismiss such a claim, she does not reference it in her opposition to the Broughton Motion to Dismiss.  Although the Amended Complaint does allege, in the "General Facts" section, that "Broughton trespassed upon the property of the Plaintiff," (*Id.* ¶ 50), Patrick provides nothing else to indicate that she intends to pursue such a claim.  Instead, Patrick organizes her claims in a manner that telegraphs the opposite:  she labels "Count I" as a "Failure to Train" claim against Petersburg, and she concludes her allegations in "Count II" by stating that an "illegal search warrant was issued of non-existent probable cause in violation of your Plaintiff's Fourth Amendment rights." (*Id.* ¶¶ 55–69.)

Regardless, Patrick's mere incantation of the word "trespass" fails to articulate a claim for common law trespass.  *Twombly*, 550 U.S. at 555 (citations omitted) (explaining that plaintiffs cannot satisfy the pleading standard under Federal Rule of Civil Procedure 12(b)(6) by including "labels and conclusions").  To the extent Patrick brings a claim for common law trespass, the Court will dismiss it.

[19] At points, Patrick asserts that Broughton's presence outside Patrick's residence in a "supervisory capacity" makes Broughton liable under § 1983 for the actions of her subordinates.  (Pl.'s Resp. to Broughton Mot. Dismiss 8.) This argument widely misses the mark.  The Fourth Circuit has set forth three elements necessary for establishing supervisory liability under § 1983:

(1) that the supervisor had actual or constructive knowledge that his [or her] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference

issuance of a warrant affords Broughton a "shield of immunity." (Deborah Broughton's Br. Supp. Mot. Dismiss ("Broughton Br. Supp.") 8.)  Even assuming the well-pleaded facts of the Amended Complaint to be true, Broughton's position prevails.  For the reasons stated below, the doctrine of qualified immunity bars Patrick's Fourth Amendment claim against Broughton in her individual capacity.

### 1.   Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  This protection "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on questions of law and fact.'"  *Id.* (citation omitted).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (citations and internal

---

to or tacit authorization of the alleged offensive practices"; and[,] (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).  "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is *widespread, or at least has been used on several different occasions* and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* (emphasis added) (citation omitted).  Patrick fails to allege that Broughton had knowledge of "conduct that posed a *pervasive* and unreasonable risk of constitutional injuries to citizens like" Patrick. *Id.* (emphasis added).  Patrick references only the search and seizure that serves as the basis for the Amended Complaint.

[20] Neither party has challenged the way in which the magistrate carried out his or her function.  The Court assumes that the magistrate acted in a neutral and detached manner.  *See Patterson v. Lawhorn*, No. 1:15cv477, 2016 WL 3922051, at *10 n.11 (E.D. Va. July 20, 2016).

quotations omitted). This allowance for reasonable mistakes balances "two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. "'[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time it was taken.'" *Messerschmidt*, 132 S. Ct. at 1245 (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

### 2. Qualified Immunity Bars Patrick's Claim Against Broughton In Her Personal Capacity

Applying qualified immunity principles to Fourth Amendment cases involving a search or seizure pursuant to a warrant, the Supreme Court of the United States has explained that "the fact that a neutral magistrate has issued a warrant is the *clearest indication* that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" *Messerschmidt*, 132 S. Ct. at 1245 (emphasis added) (citing *United States v. Leon*, 468 U.S. 897, 922–923 (1984)). The United States Court of Appeals for "[t]he Fourth Circuit . . . has held that '[w]hen a police officer protects a suspect's rights by obtaining a warrant from a neutral magistrate, the officer should, in turn, receive some protection from suit under 42 U.S.C. § 1983.'" *Godbey v. Simmons*, No. 1:11cv704, 2014 WL 345648, at *6 (E.D. Va. Jan. 30, 2014) (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991)), *aff'd*, 577 F. App'x 239 (4th Cir. 2014). "That is so because a 'magistrate's determination of probable cause provides additional support for the claim that [the officer] acted with objective reasonableness.'" *Id.* (quoting *Torchinsky*, 942 F.2d at 262); *see also Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986)

12

("[W]here a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable.").

"[T]he fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure," however, "does not end the inquiry into objective reasonableness." *Messerschmidt*, 132 S. Ct. at 1245. An exception exists "when 'it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'" *Id.* (quoting *Malley*, 475 U.S. at 341); *see also Daniczek*, 156 F. Supp. 3d at 749 ("The fact that a magistrate erroneously issues a warrant based on a constitutionally deficient affidavit does not protect the affiant where a reasonably well-trained affiant would have recognized that the affidavit did not demonstrate probable cause.").[21] Nonetheless, "the threshold for establishing this exception is a high one, and it should be." *Messerschmidt*, 132 S. Ct. at 1245. "'In the ordinary case, . . . [i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.'" *Id.* (quoting *Leon*, 468 U.S. at 921).

Guided by these principles, the Court need not determine whether Broughton's affidavit actually established probable cause[22] to search Patrick's residence for evidence relating to

---

[21] This exception necessarily means that "'a police officer violates the Fourth Amendment if, in order to obtain a warrant, he [or she] deliberately or with reckless disregard for the truth makes material false statements or omits material facts.'" *Daniczek*, 156 F. Supp. 3d at 750 (quoting *Miller v. Prince George's Cty*, 475 F.3d 621, 631 (4th Cir. 2007)).

[22] "'[T]o establish probable cause, the facts presented to the magistrate need only 'warrant a [person] of reasonable caution' to believe that evidence of a crime will be found.'" *United States v. Marion*, 547 F. App'x 283, 286 (4th Cir. 2013) (quoting *United States v. Williams*, 974 F.2d 480, 481 (4th Cir. 1992)).

dogfighting or dog abuse.[23] *Messerschmidt*, 132 S. Ct. at 1249 ("Whether any of these facts, standing alone or taken together, actually establish probable cause is a question we need not decide."); *see also Torchinsky*, 942 F.2d at 261 ("The standard for probable cause . . . is more stringent than is the requirement for qualified immunity."). Rather, the Court must determine whether *no reasonable officer* could have reached the conclusion that a warrant should have issued. *Id.* ("[W]e have recognized an exception allowing suit when 'it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'" (quoting *Malley*, 475 U.S. at 341)). In order to make this determination, the Court will look to the criminal statutes that underlined the bases for Broughton's affidavit, Broughton's affidavit itself, and the facts known to Broughton at the time she pursued the warrant.

### a. Criminal Statutes Referenced In the Search Warrant

Virginia Code § 3.2-6571, addressing dogfighting, penalizes, criminally, any person who "knowingly" "prepare[s] for" or "engage[s] in . . . the fighting of animals for amusement, sport

---

[23] The Court also need not evaluate the validity of the warrant as that matter is not before the Court. Nonetheless, the Court points out that "a warrant that describes the items subject to seizure in broad, generic terms can be valid if the description is as specific as the circumstances and the nature of the activity under investigation permit." *Godbey*, 2014 WL 345648, at *6 (citing *United States v. Dickerson*, 166 F.3d 667, 693–94 (4th Cir. 1999)).

or gain." Va. Code § 3.2-6571.[24]  Section 3.2-6571(B)(1) makes it a Class 6 Felony "[w]hen a

dog is one of the animals."  Virginia Code § 3.2-6570 enumerates categories of conduct

constituting criminal animal cruelty, assessing penalties on any person who, among other things:

"(i) overrides, overdrives, overloads, tortures, ill-treats, abandons, willfully inflicts inhumane

injury or pain not connected with bona fide scientific or medical experimentation, or cruelly or

unnecessarily beats, maims, mutilates, or kills any animal, whether belonging to himself or

another; [or,] (ii) deprives any animal of necessary food, drink, shelter or emergency veterinary

treatment."  Va. Code § 3.2-6570(A).

### b.   Facts Included in Broughton's Affidavit

Patrick does not dispute the contents of the affidavit that procured the warrant.[25]  After

Petersburg Animal Control "dispatched" Broughton to Patrick's address for "two dog[s]

---

[24] Section 3.2-6571(A) provides that "[n]o person shall knowingly":

1. Promote, prepare for, engage in, or be employed in, the fighting of animals for amusement, sport or gain;

2. Attend an exhibition of the fighting of animals;

3. Authorize or allow any person to undertake any act described in this section on any premises under his [or her] charge or control; or[,]

4. Aid or abet any such acts.

Va. Code § 3.2-6571(A).

[25] Although Patrick repeatedly alleges that Broughton intentionally misled the magistrate, nowhere in the Amended Complaint does she indicate that Broughton falsified the material facts presented in the affidavit.  Rather, Patrick asserts that that the affidavit lacked sufficient facts supporting probable cause.

Had Patrick plausibly alleged that Broughton falsified, in a material way, the facts presented in the affidavit, qualified immunity would not bar Patrick's claim.  *Daniczek*, 156 F. Supp. 3d at 750 ("'[A] police officer violates the Fourth Amendment if, in order to obtain a warrant, he [or she] deliberately or with reckless disregard for the truth makes material false statements or omits material facts.'" (quoting *Miller*, 475 F.3d at 631)).

fighting," Broughton observed "7 or 8 dogs in the back yard [sic]." (Am. Compl. ¶ 15.)

Broughton viewed "a canine lying on the ground not moving, barely breathing, [and] covered in

blood." (*Id.*) Another dog "had blood all over its head, neck and chest." (*Id.*) Broughton

entered the backyard and retrieved the injured dog, which eventually "expired" at the

"veterinarian center." (*Id.*) Broughton swore in the affidavit that the dogs' injuries were

"consistent with dog fighting." (*Id.*)

    The allegations in the affidavit alone prevent this court from concluding that "no

reasonably competent officer would have concluded that a warrant should issue." *Malley*, 475

U.S. at 341. The affidavit indicated that seven or eight dogs were present in the backyard. At

least two dogs, among the seven or eight, had a substantial amount of blood on their bodies and

had been fighting. The injuries sustained by one of the dogs proved so severe that the dog died,

and the other dog had injuries to its head, neck, and chest.

    The large number of dogs, by itself, could create a reasonable inference that the dogs

were not kept strictly as pets. While such an inference could suggest either lawful breeding or

unlawful dogfighting, the fact that Petersburg Animal Control dispatched Broughton to Patrick's

residence specifically for dogfighting[26] would allow a reasonably competent officer to conclude

the latter. Indeed, given that one of seven dogs lay bloodied and dying, deprived of "emergency

veterinary care," and that another dog had "blood all over its head, neck and chest," the facts

articulated in the affidavit could have caused a reasonably competent officer to believe that there

---

[26] Patrick alleges that Broughton observed a video that depicted "a dog fighting operation
on Washington Street in the City of Petersburg." (Am. Compl. ¶ 18.) Seemingly, Patrick
attributes Broughton's decision to pursue the search warrant to the existence of that video.
Neither the statements in Broughton's affidavit nor the allegations in the Amended Complaint
support such an inference. In fact, the Amended Complaint maintains that "Broughton . . . was
told that [Patrick's residence] was not the residence shown on the video." (*Id.* ¶ 18.)

existed a "'fair probability'" that evidence of dog abuse or illegal dogfighting existed at the Colston Street residence on that day. *See Messerschmidt*, 132 S. Ct. at 1246 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *see also* Virginia Code § 3.2-6570 (defining acts of animal cruelty, including inhumane treatment and deprivation of emergency veterinary treatment); Va. Code § 3.2-6571(A)(3) (defining, as a felony, knowingly permitting any person to promote, prepare for, or engage in dogfighting "on any premises under [that person's] charge or control"). Finally, as an animal control officer, Broughton said the injuries were consistent with dogfighting. That backdrop could readily allow this Court to find, although it need not,[27] that probable cause existed.[28]

In evaluating Broughton's claim of qualified immunity, the Court need not go so far. A qualified immunity analysis assesses whether *no reasonable officer* could have concluded that probable cause existed. The court finds that, even viewing inferences favorably to Patrick, Broughton's conduct readily meets the less stringent, qualified immunity, standard. Patrick does not alter this conclusion by suggesting that the facts articulated in Broughton's affidavit cannot support a finding of probable cause for an "organized 'dog fighting operation'" because what Broughton stated in her affidavit does no more than indicate that those two particular dogs had

---

[27] *See Messerschmidt*, 132 S. Ct. at 1249 ("Whether any of these facts, standing alone or taken together, actually establish probable cause is a question we need not decide.").

[28] The United States Court of Appeals for the Sixth Circuit has upheld the application of qualified immunity to a *warrantless* search and seizure of animals in light of suspected animal abuse. *See United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 490 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 2378 (2015). In *United Pet Supply*, the animals at issue "were dehydrated and in high heat and without water, . . . one hamster had a large cut that had not received medical care, and . . . the Pet Supply employees were unaware that a hamster had died in its cage." *Id.* The Sixth Circuit granted qualified immunity under the "exigent circumstances" exception based on these facts, holding that "[a] reasonable officer could believe that this constituted neglect under the Chattanooga City Code and that the conditions justified the warrantless seizure of the animals." *Id.*

17

been fighting. (Pl.'s Resp. to Broughton Mot. Dismiss 2.) This argument fails because a court does not ask whether an alternate, lawful theory could be inferred from the evidence.[29] The Court evaluates whether no reasonable officer could have reached the conclusion that a warrant should have issued. The Court concludes that qualified immunity plainly shields Broughton from liability stemming from her procurement of a magistrate-issued search warrant in this case.

### c.   Additional Facts Known to Broughton

Even Patrick's assertion of facts outside the affidavit does not persuade that Broughton did not act in an "objectively reasonable manner."[30] *Messerschmidt*, 132 S. Ct. at 1245. Patrick alleges that the following facts influenced or should have influenced Broughton's probable cause determination. First, Patrick alleges that Broughton "had absolutely no experience in investigating and the issuance of search warrants in 'dog fighting' cases." (Am. Compl. ¶ 18.) Second, Patrick asserts that Broughton's "training consisted of nothing more than approximately

---

[29] Indeed, an amalgam of largely innocent facts might still establish a reasonable finding of probable cause and, in turn, undergird a court's decision to find that qualified immunity exists. *See Wadkins v. Arnold*, 214 F.3d 535, 540 (4th Cir. 2000) ("[S]urrounding circumstances, even circumstances that appear innocent when considered alone, may provide a basis for finding probable cause." (citing *Porterfield v. Lott*, 156 F.3d 563, 570 (4th Cir. 1998)).

[30] The Supreme Court has not definitively ruled on whether courts should consider facts known to an officer, but not included in the affidavit, when assessing qualified immunity. *Compare Messerschmidt*, 132 S.Ct. at 1245 n.2 (criticizing the dissent for relying "almost entirely on facts outside the affidavit"), *with Messerschmidt*, 132 S. Ct. at 1255 n.4 (Sotomayor, J., dissenting) ("The Court is wrong to imply that courts should not consider 'facts outside the affidavit,' but within the officers' possession, when assessing qualified immunity.").
    The Fourth Circuit, however, has explained that Courts may look beyond the facts set forth in the affidavit to determine whether no reasonable officer could have believed that a warrant should issue. *See United States v. McKenzie-Gude*, 671 F.3d 452, 461 (4th Cir. 2011) (noting that "uncontroverted facts known to . . . an officer . . . . are certainly relevant in the qualified immunity context, which requires courts to ascertain whether a 'reasonable officer' could have believed a search was lawful 'in light of clearly established law and the information the searching officers possessed'" (citations omitted)).

[five] hours of classroom time." (*Id.*)  Third, Patrick alleges that "Broughton knew from that limited training that there was no evidence of any 'dog fighting' operation much less the existence of probable cause existing or to be found in [Patrick's] yard." (*Id.*)  And fourth, Patrick asserts that "[p]rior to the issuance of the search warrant[,] Broughton had been contacted by the Attorney General's Office . . . and was provided a 'video' which allegedly contained a video of a dog fighting operation on Washington Street in the City of Petersburg." (*Id.*)

With respect to the first two facts, the Court cannot ascertain how Broughton's purported inexperience should alter its determination regarding the existence of probable cause from an objective standpoint.[31]  The Court holds Broughton to the objective standard of a "well-trained affiant," as it must. *Daniczek*, 156 F. Supp. 3d at 749 ("The fact that a magistrate erroneously issues a warrant based on a constitutionally deficient affidavit does not protect the affiant where a reasonably well-trained affiant would have recognized that the affidavit did not demonstrate probable cause.").  Moreover, independent of Broughton's experience, and even drawing inferences in Patrick's favor, this Court has noted that Broughton's observations during a response to a dogfighting call, taking into consideration Virginia Code §§ 3.2-6570 and 3.2-6571, could have caused a reasonably competent officer to conclude that the life-threatening and untreated injuries she initially observed resulted from illegal dogfighting.

---

[31] Patrick suggests in her response to the Broughton Motion to Dismiss, in what may reveal what animates her argument, that Broughton "lied about her experience" with respect to investigating dogfighting cases under Virginia Code § 3.2-6571. (Pl.'s Resp. to Broughton Mot. Dismiss 9.)  This argument does not overcome the notion that even an inexperienced officer could, objectively, determine that probable cause existed.  More importantly, Patrick misreads the warrant.  Patrick suggests that Broughton swore to having experience presiding over three dogfighting warrants.  Nowhere in the affidavit did Broughton indicate that she had experience in *dogfighting* cases.  In contrast, Broughton's affidavit stated that she served as an animal warden and that she had presided over three search warrants "dealing with animals." (Compl. Ex. A, at 5, ECF No. 7-1.)

Next, the Court readily refutes the third fact because Patrick's claim that no evidence supported a finding of probable cause constitutes a legal conclusion that the Court need not accept as true. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (holding that, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Finally, regarding the video provided by the Attorney General's Office, Patrick alleges no facts suggesting how the existence of a video pertaining to dogfighting at a different address should affect a reasonable officer's probable cause determination with respect to the residence at issue. Patrick does not allege that Broughton relied on the video in seeking the warrant. Nor does Patrick allege that Broughton disclosed the video's existence in her affidavit, somehow suggesting it pertained to the Colston Street residence. The Amended Complaint contends that "Broughton was specifically reminded of that fact and was told that this was not the residence shown on the video," meaning that Broughton could not have been confused that the video pertained to the Colston Street residence. (Am. Compl. ¶ 18.) Thus, nothing in the Amended Complaint, even drawing all inferences in Patrick's favor, suggests that Broughton experienced confusion about seeking a warrant for the Colston Street residence instead of the Washington Street residence depicted in the video. Even considering all of Patrick's allegations of fact outside those included in the warrant, they do not persuade the Court that no reasonable officer would have concluded that a warrant should have issued.[32]

---

[32] Patrick further argues that "Broughton . . . observed in the shed found in the back yard, food, water and shelter for the dogs." (Pl.'s Resp. to Broughton Mot. Dismiss 2.) The existence of "food, water[,] and shelter" does not alter the Court's finding that a reasonable officer could have concluded that probable cause existed to search Patrick's residence for evidence of dogfighting or dog abuse. The presence of "food, water[,] and shelter" does nothing more than suggest that the dogs were provided the necessities to survive. Such an observation alone would not militate against a reasonable officer's belief that probable cause existed to search the

Ultimately, "[e]ven if the warrant in this case were invalid, it was not so obviously lacking in probable cause that [Broughton] can be considered 'plainly incompetent' for concluding otherwise." *Messerschmidt*, 132 S. Ct. at 1250 (quoting *Malley*, 475 U.S. at 341). Qualified immunity thus shields Broughton from liability in her personal capacity. The Court will grant the Broughton Motion to Dismiss.

### C.     The Patrick Motion for Summary Judgment is Moot and Otherwise Fails to Comply With the Local Civil Rules of This Court

Because the Court will grant the Broughton Motion to Dismiss, the Court need not decide the Patrick Motion for Summary Judgment. Accordingly, the Court will deny the Patrick Motion for Summary Judgment as moot.

However, the Court mentions that if the Patrick Motion for Summary Judgment remained pending, the Court could deny it because it failed to comply with the Local Civil Rules for the United States District Court for the Eastern District of Virginia. Courts within this District require that a party moving for summary judgment set forth, in an organized fashion, the undisputed facts upon which he or she relied. *See* E.D. Va. Loc. Civ. R. 56(B).[33] Patrick's briefing ignored this requirement.

---

property for dog abuse or dogfighting. Simply put, an officer could conclude that, in such an operation, dogs must be strong enough to fight.

[33] Local Civil Rule 56(B) provides in pertinent part:

(B) **Summary Judgment – Listing Of Undisputed Facts:** Each brief in support of a motion for summary judgment shall include a *specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue* and citing the parts of the record relied on to support the listed facts as alleged to be undisputed.

E.D. Va. Loc. Civ. R. 56(B) (emphasis added).

Patrick neglected to set forth in the Patrick Motion for Summary Judgment the

undisputed facts upon which she relies. *See CertusView Techs., LLC v. S & N Locating Servs.,*

*LLC*, No. 2:13cv346, 2015 WL 4717256, at *3 (E.D. Va. Aug. 7, 2015) ("[A] party who moves

for summary judgment without 'includ[ing] a specifically captioned section listing all material

facts as to which the moving party contends there is no genuine issue . . .' has violated the

Court's Local Rules." (quoting E.D. Va. Loc. Civ. R. 56(B)).  Courts in the Eastern District of

Virginia weigh these matters seriously:  "In response to a movant's blatant violation of Local

[Civil] Rule 56(B), the Court may deny a motion for summary judgment outright." *Id.* at *4

(citing *Mitchell v. Angelone*, 82 F. Supp. 2d 485, 487 (E.D. Va. 1999)).  On the other hand, we

know that "the Court has the inherent equitable authority to 'resolve the substantive issues raised

and alleviate the need to consider them at trial.'" *Id.* (quoting *Williams v. Gradall Co.*, 990 F.

Supp. 442, 444 (E.D. Va. 1998)).[34]

Overall, the policy behind Local Civil Rule 56 counsels for enforcement of strict

adherence by the courts.  "[W]hile a court occasionally may forgive a litigant for failing to

strictly comply with mere procedural formalities in the Local Rules, a violation of Local [Civil]

Rule 56(B) lies at the more serious end of the spectrum of noncompliance." *Id.* at *5.  As the

court in *CertusView* aptly summarized:

> Local [Civil] Rule 56(B) is not a trap for the unwary designed to ensnare hapless
> litigants.  Rather, it is inextricably connected to the burden that the Federal Rules
> of Civil Procedure impose on a summary judgment movant . . . .
>
> . . .

---

[34] *See also CertusView Techs., LLC*, 2015 WL 4717256, at *4 ("[F]or more minor violations of Local [Civil] Rule 56(B), courts sometimes will refuse to 'elevate form over substance' and, instead, will excuse the party's failure to comply with the rule." (quoting *White v. Golden Corral of Hampton, LLC*, No. 4:13cv27, 2014 WL 1050586, at *3–4 (E.D. Va. Mar. 14, 2014)).

Local [Civil] Rule 56(B) serves two salutary purposes. It notifies non-moving parties of the facts that the movant contends are undisputed and support the movant's alleged entitlement to judgment as a matter of law, and it provides the Court with an organized analytical framework to assess whether any material factual dispute exists and whether the movant is entitled to the relief sought. A party that ignores Local [Civil] Rule 56(B) undermines those dual purposes and impedes the Court's ability to fairly and expeditiously resolve a motion for summary judgment.

*Id.*[35]

Her failure to follow the local rule could warrant an outright denial of the Patrick Motion for Summary Judgment even were it not moot. This is true not just because Patrick failed to list undisputed facts in a separate section, but also because, in her section entitled "Facts and Exhibits," she identified the existence of a factual *dispute* regarding the basis for Broughton's affidavit. And this dispute might lie at an important aspect of Patrick's Fourth Amendment claim. (Patrick's Br. Supp. Mot. Summ. J. at 5, ECF No. 22 ("Although Broughton subsequently claimed that there was blood on the other dogs, this was factually disputed by two . . . eyewitnesses at the scene as shown by the attached Affidavits of Kelly Garcia and Amy Taylor.").) A genuine, material factual dispute would eviscerate any possibility of granting summary judgment.

The Court recognizes Broughton's express challenge to the procedurally defective motion. (ECF No. 26.) The Court also sees that Patrick "did nothing to address [her] failure to

---

[35] *Cf. Jackson v. Broome Cty. Corr. Facility*, 194 F.R.D. 436, 437 (N.D.N.Y. 2000) ("When a party fails to comply with these provisions it is unfair to its adversary, which has a right to know the factual bases of its opponent's case and the specific foundations for those assertions of fact; and its conduct is adverse to the conservation of judicial resources, which are most efficiently deployed when the parties fulfill their adversarial functions in a rigorously organized, coherent fashion.").

comply with Local [Civil] Rule 56(B)."[36]  *CertusView Techs., LLC*, 2015 WL 4717256, at \*5. While Broughton's response otherwise might be well taken given the existence of a disputed fact, the Court cannot address the Patrick Motion for Summary Judgment because it is moot.  *Id.*

### IV.  Conclusion

For the foregoing reasons, the Court will:  (1) grant the Petersburg Motion to Dismiss; (2) grant the Broughton Motion to Dismiss; and, (3) deny as moot the Patrick Motion for Summary Judgment.

An appropriate order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 9/30/16

---

[36] Patrick made no attempt to explain her failure to comply with the Local Civil Rules of this Court nor has she asked the Court for the opportunity to amend her defective briefing after Broughton raised this defect in response.  Patrick did not file a reply brief at all.